IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| HALEY HARRIS,<br>    Plaintiff, | *<br>*<br>* |
| v. | *   Civil Action File No. 4:20 -CV-176 (CDL)<br>* |
| SAM'S EAST, INC.,<br>    Defendant. | *<br>* |

## COMPLAINT

COMES NOW Plaintiff Haley Harris, by and through counsel, and shows this Honorable Court the following:

## INTRODUCTION

1.

This action for injunctive relief and money damages for race and gender discrimination in employment and for retaliation is brought pursuant to 42 U.S.C. §2000e, *et seq*., as amended in 1972 and 1991 (hereinafter "Title VII"), and 42 U.S.C. §1981.

## JURISDICTION AND VENUE

2.

Jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1337, and 1343 which confer original jurisdiction upon this Court of any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights under the Declaratory Judgment Statute, 22 U.S.C. §2201; 42 U.S.C. §1981; Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §2000 *et seq*.); and the Civil Rights Act of 1991.

3.

All violations of Plaintiff's rights, as alleged herein, were committed within the jurisdiction of the United States District Court for the Middle District of Georgia, Columbus Division, and venue is therefore proper in this Court.

**PARTIES**

4.

Plaintiff is a white (Caucasian) adult female resident of Columbus, Muscogee County, Georgia, and she submits herself to the jurisdiction and venue of this Court upon the filing of this action.

5.

Defendant SAM'S EAST, INC. is a foreign profit corporation registered to do business in the state of Georgia.

6.

Defendant SAM'S EAST, INC. is an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g), and (h) of Title VII and 42 U.S.C. §1981, employing more than fifteen persons for each working day in each of twenty (20) calendar weeks in the current or preceding calendar year.

**NATURE OF THIS ACTION**

7.

This is a proceeding for declaratory judgment as to Plaintiff's rights and for a permanent injunction enjoining Defendant from maintaining a policy and practice of discriminating against Plaintiff and other employees in employment decisions because of their race and gender and

from retaliating against employees because of their protected expressions regarding employment discrimination.

8.

This action also seeks restitution to Plaintiff of all rights, privileges, benefits, and income she would have received but for Defendant's unlawful and discriminatory practices.

9.

This action further seeks compensatory and punitive damages for Plaintiff.

## ADMINISTRATIVE PROCEDURE

10.

Plaintiff filed a charge of race and gender discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC) within 180 days of the occurrence of the acts of which Plaintiff complains.

11.

This civil action is instituted in the appropriate federal district court within ninety (90) days of Plaintiff's receipt of her Notice of Right to Sue from the Atlanta District Office of the EEOC.

## FACTS

12.

Defendant employed Plaintiff as a sales floor associate in clothing at the Sam's Club in Columbus, Muscogee County, Georgia, from February 2015 until September 19, 2019.

13.

At some point in 2017, Plaintiff complained to her team lead that another associate, Alfredo Apolinario (a Hispanic male), had been sexually harassing her, including telling her that she was "hot between the legs." Plaintiff's team lead then inappropriately confronted Apolinario

in front of Plaintiff and other employees, telling Apolinario that he couldn't be saying things like "you're hot between the legs" to girls. Shortly thereafter, the Store Manager, Madeline Torres (a Hispanic female), confronted Plaintiff about her complaints about Apolinario. Plaintiff had not wanted to complain to Torres because Plaintiff had witnessed Torres' obvious preferential treatment of Hispanic employees, at the expense of non-Hispanic employees. Plaintiff truthfully told Torres about Apolinario's inappropriate conduct, including his "hot between the legs" comment and a comment that her taking birth control pills was murdering babies.

14.

Torres told Plaintiff that Plaintiff needed to sit down with Apolinario and talk about it, but Plaintiff said she felt uncomfortable doing that. Nevertheless, Torres pulled Plaintiff into her office, along with Apolinario and another male manager, and asked Plaintiff about her sexual harassment complaint against Apolinario. Plaintiff truthfully reported to Torres that Apolinario had been making several types of inappropriate comments to her, including sexually offensive comments. Apolinario then lied and claimed that Plaintiff had made a racist comment to him and that she had touched his hair without his permission, both of which Plaintiff denied. Torres refused to take any action against Apolinario but instead told both Plaintiff and Apolinario to just stay away from each other.

15.

For a while, things worked out okay between Plaintiff and Apolinario, and at one point, they even began speaking casually to each other at work. However, when a young Hispanic male associate named Seth was hired in 2018, Apolinario resumed making sexually offensive comments to Plaintiff and about Plaintiff in front of Seth and other associates, including making the comment that Plaintiff should have a "three-way" with Seth and him.

16.

Apolinario also came to Plaintiff multiple times asking her to add him on Instagram. Only because Apolinario kept pestering her about it, Plaintiff finally added him on her Instagram.

17.

Throughout the time that Plaintiff worked in the store when Seth also worked there, Plaintiff never engaged in any sexually offensive conduct toward Seth. At one point, Plaintiff suggested to Seth that they go have some cheesecake at the Loft, a local restaurant famous for its cheesecake dessert, just as Plaintiff had suggested to other co-workers as well, and not for any sexual or other inappropriate reason. However, when Plaintiff learned that Seth had mistakenly thought that Plaintiff's suggestion to go get cheesecake was somehow an expression of sexual interest in him, Plaintiff told Seth that she didn't have feelings for him that way, that she wasn't interested in him that way, and that he was too young for her. Plaintiff never told Seth or any other co-worker that she wanted to have sex with Seth. However, other co-workers constantly badgered Plaintiff about whether she liked Seth or wanted to have sex with him, which Plaintiff found inappropriate and offensive.

18.

After the "cheesecake" incident, because Plaintiff was concerned that Apolinario was going to make comments that were inappropriate, Plaintiff blocked him from her Instagram.

19.

One day in May 2019 when Plaintiff was working in an area about 50 feet away from Seth, Apolinario, and a manager named Bernicia (a black female), Bernicia yelled across the floor to Plaintiff, "Hey, Haley, Seth needs some pussy." This upset Plaintiff so she yelled back that she wasn't interested in children, since Seth was younger than her.

20.

Plaintiff complained to her supervisor Nielani about the incident of Bernicia yelling out the sexually offensive comment to her in front of Seth and Apolinario. Plaintiff also complained that Apolinario had resumed making sexually offensive comments to her and about her at work ever since Seth had been hired. Nielani told Plaintiff that she was going to report Plaintiff's complaint it to the Defendant's Ethics Hotline, but she was not going to report it to Torres since Torres had refused to do anything about Plaintiff's previous complaints about Apolinario.

21.

In July 2019, Plaintiff complained to Defendant's Ethics Hotline about Apolinario's sexually offensive harassment of her, about the store management's failure to appropriately address Plaintiff's complaints, and about being retaliated against because she had complained to management about Apolinario's sexually offensive and intimidating conduct toward her and about the discriminatory and preferential treatment given to Hispanics, at the expense of non-Hispanics, by store Manager Torres and her Department Manager Walter Capozucca (a Hispanic male). Plaintiff never heard back from the Ethics Hotline investigator nor from any other manager or human resources personnel about any further investigation into her complaints.

22.

After Plaintiff had complained about Apolinario to the Ethics Hotline, Plaintiff complained several more times to her supervisor Nielani, because Apolinario was still behaving in a hostile and intimidating manner toward her, including coming into her work area and staring at her, and talking to other employees about her.

23.

Sometime after Plaintiff had complained about Apolinario to the Ethics Hotline, Plaintiff went out to the parking lot to move her car as requested by store management because the parking lot was being re-paved. As Plaintiff was walking across the parking lot toward her car, Apolinario suddenly drove his yellow jeep toward her in an aggressive manner, which frightened Plaintiff because she was afraid he was trying to run her down with his vehicle.

24.

Plaintiff complained to her supervisor Nielani about Apolinario threatening her in the parking lot, telling her that she didn't feel safe because Apolinario had been telling everyone about her complaints, that no one would speak to her, and that everywhere she looked, he was there. Nielani said she would report the car incident but that she hadn't witnessed it and he worked there too.

25.

Shortly after Plaintiff reported the car incident to Nielani, Apolinario asked to be moved off the afternoon shift to the morning shift because he was fed up with Plaintiff complaining about him, and Torres moved him as he had requested. However, Torres still did nothing to address or rectify Apolinario's sexually offensive and threatening conduct toward Plaintiff, including failing to discipline Apolinario in any way for his misconduct.

26.

Unbeknownst to Plaintiff at the time, Capozucca, the Department Manager over both Plaintiff and Apolinario, assured Apolinario that his job was not in jeopardy, that Plaintiff was the problem, and that he would take care of Apolinario.

27.

Sometime in August 2019, after Plaintiff had complained to the Ethics Hotline, Capozucca pulled Plaintiff aside and told her, "When we want to get rid of people, we find a reason." Before this, Plaintiff had complained to Capozucca about him treating herself and other female employees worse than how he treated the male employees.

28.

Unbeknownst to Plaintiff at the time, Defendant's investigation into Plaintiff's complaints about Apolinario's sexual harassment of her and about Torres' and Capozucca's refusal and failure to adequately address her complaints was transformed into a secret witch hunt against Plaintiff which led to Plaintiff's unlawful termination.

29.

While Defendant was allegedly investigating Plaintiff's discrimination and retaliation complaints, Plaintiff was never informed by Torres, Cappazucco, any other manager, any Ethics Hotline investigator, or any human resources manager that *Plaintiff* was being investigated for any alleged wrongdoing. Plaintiff was never given an opportunity to refute the lies told to the Ethics Hotline investigator and other managers by Apolinario, Seth, and other cohorts of Apolinario. Plaintiff was never informed at any time that she had been accused of sexually harassing Seth.

30.

On September 19, 2019, after Plaintiff reported for work at 3:00 p.m., Torres called Plaintiff into her office at dinner time, around 6:00 p.m. Torres told Plaintiff that the investigation into her complaint was over and that the result of the investigation was that they had "red coded" Plaintiff, i.e., they had given Plaintiff the equivalent of three written warnings.

Torres refused to tell Plaintiff the reason why they had decided to red code her and refused to tell her what she had allegedly done that was wrong. Torres said that because Plaintiff had a write-up from February 2019 for being late that had not fallen off, that made four offenses, and therefore Plaintiff was fired.

31.

Plaintiff immediately complained to Defendant's Home Office and to Defendant's Ethics Hotline that she had been fired in retaliation for complaining about sexual harassment, and gender and race discrimination. Plaintiff never heard back from the Ethics Hotline about her complaints of retaliatory termination.

32.

Even though she admitted making a sexually offensive comment to Plaintiff about Seth in front of Seth, Apolinario, and other employees, Bernicia (a black female) was not terminated.

33.

Even though Plaintiff had complained numerous times about his sexually offensive and threatening conduct toward Plaintiff, Apolinario (a Hispanic male) was not terminated nor disciplined in any way.

34.

Defendant illegally disciplined Plaintiff and terminated her employment because of her race (Caucasian) and gender (female).

35.

Defendant inflicted unfair disciplinary action on Plaintiff and unlawfully terminated Plaintiff in retaliation for her good faith complaints about unlawful gender and race discrimination and retaliation.

## **CAUSES OF ACTION**

### **COUNT I**

**VIOLATION OF 42 U.S.C. § 2000e, *ET SEQ*. (TITLE VII)
RACE DISCRIMINATION**

36.

Plaintiff realleges and incorporates herein all preceding paragraphs of this Complaint.

37.

The effect of Defendant's above-stated actions of discrimination against Plaintiff because of her race (Caucasian) has been to deprive Plaintiff and other similarly situated employees of equal employment opportunities, income in the form of wages, prospective retirement benefits, social security, and other benefits due them as workers solely because of race. Plaintiff and other similarly situated employees have suffered, are now suffering, and will continue to suffer irreparable injury from Defendant's policies and practices as set forth in this Complaint, including but not limited to lost wages, benefits of employment, mental and emotional distress, humiliation, outrage, damage to reputation, and deprivation of rights under federal law.

38.

As a direct and proximate result of Defendant's actions, or inaction, as described herein, Plaintiff was subjected to discrimination based on race.

39.

In regard to Count I of this Complaint, Defendant has acted intentionally, willfully, maliciously, arbitrarily and capriciously, and in bad faith.

40.

Plaintiff is entitled to equitable and monetary relief for Defendant's violations of Title VII of the Civil Rights Act of 1964, as amended.

## COUNT II

### VIOLATION OF 42 U.S.C. § 2000e, *ET SEQ*. (TITLE VII)
### GENDER DISCRIMINATION

41.

Plaintiff realleges and incorporates herein all preceding paragraphs of this Complaint.

42.

The effect of Defendant's above-stated actions of discrimination against Plaintiff because of her gender (female) has been to deprive Plaintiff and other similarly situated employees of equal employment opportunities, income in the form of wages, prospective retirement benefits, social security, and other benefits due them as workers solely because of race.  Plaintiff and other similarly situated employees have suffered, are now suffering, and will continue to suffer irreparable injury from Defendant's policies and practices as set forth in this Complaint, including but not limited to lost wages, benefits of employment, mental and emotional distress, humiliation, outrage, damage to reputation, and deprivation of rights under federal law.

43.

As a direct and proximate result of Defendant's actions, or inaction, as described herein, Plaintiff was subjected to discrimination based on gender.

44.

In regard to Count II of this Complaint, Defendant has acted intentionally, willfully, maliciously, arbitrarily and capriciously, and in bad faith.

45.

Plaintiff is entitled to equitable and monetary relief for Defendant's violations of Title VII of the Civil Rights Act of 1964, as amended.

## **COUNT III**

### **VIOLATION OF 42 U.S.C. § 2000e *ET SEQ*. (TITLE VII)**
### **RETALIATION**

46.

Plaintiff realleges and incorporates herein all preceding paragraphs of this Complaint.

47.

The effect of Defendant's above-stated actions of retaliation against Plaintiff because of her good faith complaints regarding unlawful race and gender discrimination has been to deprive Plaintiff and other similarly situated employees of equal employment opportunities, including but not limited to the right to work in an environment free from hostile, retaliatory treatment including retaliatory discipline and termination, the opportunity for advancement, income in the form of wages, prospective retirement benefits, social security, and other benefits due them as workers solely because of good faith complaints about race discrimination.  Plaintiff and other similarly situated employees have suffered, are now suffering, and will continue to suffer irreparable injury from Defendant's policies and practices as set forth in this Complaint, including but not limited to lost wages, benefits of employment, mental and emotional distress, humiliation, outrage, damage to reputation, and deprivation of rights under federal law.

48.

As a direct and proximate result of Defendant's actions, or inaction, as described herein, Plaintiff was subjected to unlawful retaliation because of her complaints regarding unlawful race and gender discrimination.

49.

In regard to Count III of this Complaint, Defendant has acted intentionally, willfully, maliciously, arbitrarily and capriciously, and in bad faith.

50.

Plaintiff is entitled to equitable and monetary relief for Defendant's violations of Title VII of the Civil Rights Act of 1964, as amended.

**COUNT IV**

**VIOLATION OF 42 U.S.C. §1981**
**RACE DISCRIMINATION**

51.

Plaintiff realleges and incorporates herein all preceding paragraphs of this Complaint.

52.

The employment relationship between Plaintiff and Defendant is a contract within the meaning of 42 U.S.C. §1981 which gives rise to a cause of action where racial discrimination is alleged to be the causative agent of adverse employment action.

53.

Defendant's unlawful employment practices and actions against the Plaintiff, as described herein, were discriminatory based on her race (Caucasian) and therefore violated her rights under 42 U.S.C. §1981, thus entitling her to all appropriate relief provided under the statute.  As the direct and proximate result of Defendant's violations of 42 U.S.C. §1981 by its actions or inaction, as described herein, Plaintiff was subjected to unlawful race discrimination by Defendant, causing Plaintiff to suffer damages consisting of but not limited to economic loss, emotional distress, humiliation, and damage to reputation, and Plaintiff is requesting all damages allowable pursuant to the statute, including injunctive relief, compensatory damages, and punitive damages.

54.

Plaintiff is entitled to all damages allowable pursuant to the statute for Defendant's violation of 42 U.S.C. §1981, including injunctive relief, compensatory damages, and punitive damages.

55.

In regard to Count IV of this Complaint, Defendant has acted intentionally, willfully, maliciously, arbitrarily and capriciously, and in bad faith.

## COUNT V

### VIOLATION OF 42 U.S.C. §1981
### RETALIATION

56.

Plaintiff realleges and incorporates herein all preceding paragraphs of this Complaint.

57.

The employment relationship between Plaintiff and Defendant is a contract within the meaning of 42 U.S.C. §1981 which gives rise to a cause of action where retaliation because of good faith complaints of race discrimination is alleged to be the causative agent of adverse employment action.

58.

Defendant's unlawful employment practices and actions against the Plaintiff, as described herein, were unlawful retaliation against Plaintiff because of her good faith complaints about unlawful race discrimination and retaliation and therefore violated her rights under 42 U.S.C. §1981, thus entitling her to all appropriate relief provided under the statute. As the direct and proximate result of Defendant's violation of 42 U.S.C. §1981, by their actions or inaction, as described herein, Plaintiff was subjected to unlawful retaliation by Defendant, causing Plaintiff

to suffer damages consisting of but not limited to economic loss, emotional distress, humiliation, and damage to reputation.

59.

Plaintiff is entitled to all damages allowable pursuant to the statute for Defendant's violation of 42 U.S.C. §1981, including injunctive relief, compensatory damages, and punitive damages.

60.

In regard to Count V of this Complaint, Defendant has acted intentionally, willfully, maliciously, arbitrarily and capriciously, and in bad faith.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court advance this case on the docket, order a speedy hearing at the earliest practicable date, cause this action to be expedited, and upon such hearing to:

1. Issue a declaratory judgment that Defendant's actions, policies, and procedures violated Plaintiff's rights as secured under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, and 42 U.S.C. §1981;

2. Permanently enjoin Defendant, its officers, agents, successors, employees, attorneys, and those acting in concert with them, from engaging in any employment policy or practice which discriminates against any employee or applicant for employment on the basis of race, or which discriminates against employees because they complain about and oppose Defendant's unlawful and discriminatory employment practices;

3. Grant to Plaintiff judgment against Defendant pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq. (as amended 1972 and 1991), the Civil Rights Act of

1991, and 42 U.S.C. §1981, for compensatory damages in an amount reasonable and commensurate with the pain and emotional distress imposed upon her by Defendant's discriminatory and tortious acts, including but not limited to damages for pain and suffering, for emotional distress, for lost wages and benefits, and for reduced earning capacity;

4. Grant to Plaintiff judgment against Defendant pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq. (as amended 1972 and 1991), the Civil Rights Act of 1991, and 42 U.S.C. §1981 for punitive damages in an amount reasonable and commensurate with the harm done and calculated to be sufficient to deter such conduct in the future;

5. Grant to Plaintiff a jury trial on all issues so triable;

6. Grant to Plaintiff the costs of this action together with reasonable attorneys' fees and expenses of litigation as provided by Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981;

7. Grant to Plaintiff back pay and front pay for the wages and benefits she would have earned but for Defendant's actions and inaction;

8. Grant such additional relief as this Court deems proper and just.

Respectfully submitted, this 28th day of July, 2020.

                                            *s/ Gwyn P. Newsom*
                                            Law Office of Gwyn P. Newsom, LLC
                                            Georgia Bar No. 541450
                                            Attorney for Plaintiff

P.O. Box 629
Columbus, GA  31902-0629
(706) 324-4900
gwyn@gnewsomlaw.com

                                            *s/ Maxine Wallace*
                                            Maxine Wallace, P.C.
                                            Georgia Bar No. 325905

P.O. Box 349
Columbus, GA  31902-0489
(706) 324-6300
maxine@attorneymaxinewallace.com